The Honorable Justice of the United States Court of Appeals, and to the County Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States and this honorable court. Good morning. We have six cases this morning for oral argument. Our first case for oral argument is 25-1325, Bochart v. Ambit, Illinois. Good morning, Ms. Garland. Good morning. May it please the court, Jessica Garland for the plaintiffs, Mr. Bochart and Mr. Simmons. Ambit Energy offers the exact same gas as the local utility delivered through the local utility's infrastructure. So the only reason consumers would switch to Ambit is for a lower price, and that's why Ambit promised them a guaranteed savings plan where they are guaranteed a lower price than the local utility. But once consumers were signed up, Ambit pulled a bait and switch. It sent consumers an inconspicuous letter that looks like a junk mailer designed to ensure that consumers did not notice new terms that's stated in fine print. If they did not opt out, they'd be switched to a competitive variable plan. Ms. Garland, let me ask you about a jurisdictional matter that really our cases have treated more like abstention, and that's the local controversy exception of the Class Action Fairness Act. So it directs the district courts. It says shall abstain, but we have our case law interpreting that shall. It's not quite a shall, but certainly could abstain, where we've got more than two-thirds of the members of the proposed plaintiff class, they're citizens of the original filing state. That's Illinois. At least one defendant is a defendant from whom members of the proposed class seek significant relief. It's their conduct that forms a significant base. So you're nodding. You're following me here. Why doesn't the local controversy exception apply here? Yes. In Wise v. Wachovia, this court in 2006 explained that citizenship for diversity purposes of a limited liability company looks to the citizenship of each of its members. Here, Ambit Illinois is an LLC, and its members, if you go down the chain, are citizens of Texas and Delaware. So there are three named plaintiffs here. One is Vista Operations Company, which is the LLC, and Ambit Illinois' sole member is the Vista Operations Company. And then Vista Operations Company has in turn a sole member, which is another defendant, Vista Corporation, which is a Delaware corporation with a principal place of business in Irving,  So because each of the three defendants are all citizens of Texas and Delaware, not Illinois, there is complete diversity. And so I don't believe that that provision of the Class Action Fairness Act would apply. And it's a function of the LLC. And so that was not the case in New York. There was another Ambit case in New York. Is that your position? And I'll ask your colleagues on the other side, too. The Ambit case in New York, I'm not sure exactly what specific LLC of Ambit that was sued in that case. And if that was a New York entity. As alleged in the docketing statement, the specific entity here that's being sued, called Ambit, is an LLC in turn, which is another, has one sole member, which is a corporation with a citizen of Texas and Delaware. So under Wise v. Wachovia, that means that Ambit, Illinois LLC, the defendant in this case, is also a citizen of Texas and Delaware. Thank you, Ms. Garland. Yes. To begin with a contract interpretation, Ambit imposed limitations on itself for when it can unilaterally amend its contract. But those limitations are not met here. Ambit expressly stated that there are three situations under which it could unilaterally amend. And those three specific situations all have to do with changes in rules, regulations, and laws that Ambit has no control over. And the negative implication canon teaches that the expression of one thing implies the exclusion of others. So the fact that the contract specifically stated it could unilaterally amend in three specific circumstances implies there's no fourth unstated circumstance it could also unilaterally amend, such as if Ambit just decides it wants to increase the price of its contract. Although, of course, this court doesn't need to determine the exact, its exact affirmative reading or adopt one reading of the contract. At the very least, the contract here is ambiguous. And when a contract is ambiguous, its meaning is a question of fact that cannot be resolved on a motion to dismiss. How do you get around the background common law that the district court relied on with respect to Illinois' liberal policy and liberal approach to allowing contract amendments? I believe, Your Honor, that the district court actually relied on the text of the contract and did not rely on the common law. That's because Ambit didn't argue that it had a right. I don't think that's right. I know Ambit didn't argue that below. But it seemed to me that the court, sua sponte, relied on the Illinois policy in construing the contract. Namely, finding that that first sentence you've just walked us through was not exclusive because the exclusive language wasn't used as required under the policy. To the extent that the district court found that if a contract doesn't prevent amendment, an amendment is permitted under the common law. We don't dispute that. But the common law does not provide any unilateral right to amend. But how is this unilateral given the 45-day notice provision? It's unilateral because there's no need for any additional consideration. There's no need for any affirmative acceptance. But your client had the option to say, no, thank you. We want to stay with the original contract. Even if that provision applied to this type of change, which again, we don't believe it does because the negative implication canon is clear. Still, Ambit failed to satisfy the material change notice that it itself imposed on itself. That's because it failed to provide any notice of what the change was going to be in the cover letter. Nothing in the cover letter sent to consumers indicated that the purpose of the contract, that the guaranteed savings promise they had signed up for was going to be over or could be over. The cover letter did say new terms or updated version of your old terms. That seems like it's informing you there's a change. Respectfully, Your Honor, I disagree. For example, Mr. Simmons' contract said, in close you will find your new terms of service that will be effective on July 29, 2012 and contains information about your current natural gas plan. You may renew your current plan or select a different one. Because in the past and under the original contract, the same terms consistently renewed each year, I don't believe that those few lines indicated that something was changing about the way they needed to renew to stay on the plan that they had. And moreover, it's not just that Ambit failed to provide a material change notice. To the contrary, it actually intentionally deceived consumers. And notice cannot be adequate when it actively misleads a consumer. Ambit sent these letters in inconspicuous mailers that looked like junk mail. Ambit itself recognized that although every reasonable consumer would want to stay on the guaranteed savings plan, nevertheless, 65% would fail to respond to the notice to stay on the plan. A notice that a sender ex ante expects to be ignored by two-thirds of the recipients cannot be considered to be reasonable. And if you look at the case law, I think it really emphasizes why this is not sufficient notice. So this court, for example, in Gupta v. Morgan Stanley, contrasted an email from an employer stating that there was a new arbitration provision from Morgan Stanley with a First Circuit case called Campbell v. General Dynamics where it found that there was no notice. And the difference between the two cases demonstrates why there was no notice here. As the court recognized, there was no sufficient notice in Campbell because the cover letter failed to mention the critical facts about the arbitration policy. The cover letter said there was going to be a new dispute resolution policy that included arbitration. But it didn't emphasize the change in the terms of service that had a contractual significance, the fact that an employee was giving up their right to a jury trial. And so the court there focused on the point that if there are changes in the fine print of the terms of service, if the cover letter does not alert the reader to those changes, it doesn't indicate there's any reason for the reader to go back and look at the fine print, that's not sufficient notice. And, for example, in Sudaco, a Second Circuit case that we cite, similarly there, the cover letter made no mention of the enclosed agreement which had the contractual significance in the terms of service. And so as the court recognized, the question is, is a reasonable person going to anticipate an imposition of a legally significant alteration to the terms of service based on the cover letter? Consumers get so many terms of service updated, attached, and so a reasonable consumer has to think about what was the terms before and is there any reason to think I need to go and parse these new terms or not? Again, the initial contract just had the guaranteed savings plan renewed yearly. So without directing a consumer to the point that if they didn't actively do something, they were going to lose the entire purpose of signing up for AMBA in the first place, it's not reasonable to expect a consumer to go and then parse the terms. And even if a consumer did parse the terms, they still won't necessarily understand the significance because the terms itself claim that this variable plan is competitive. There is, of course, nothing competitive about this variable plan. It was on average $250 more each year. So both the way that the envelope was presented in a junk mailer, the way that the cover letter failed to give adequate notice of the material significance of the terms and conditions, and to the contrary, misled consumers to think that the terms and conditions were just things about their current plan. And then even the terms and conditions themselves, none of them gave sufficient notice, and together all three actually misled consumers. So even if the contract did permit a change to be made through material change notice, it wasn't satisfied here. And the common law also does not permit this type of unilateral change. And that's particularly true because silence is not acceptance generally. The original contract did not indicate that there could be a future agreement that would be accepted to through silence. And as this Court emphasized in Robinson, there's no liability on an offeree that remains silent or continues in established ways. So, again, if you look to the contrast between Gupta and Campbell, I think it's very helpful there. Because the Court in Gupta said the only reason silence was acceptance in that case was because of three very specific reasons that do not exist here. First, the cover letter itself twice said in bold letters, if you don't do anything, if you don't opt out, silence will be acceptance. Again, here the cover letter did not indicate anything, that if you don't actively do something, you're going to lose your plan. Moreover, the initial contract emphasized the exact way notice could be given in which silence could be acceptance, and that exact policy was followed in Gupta. And then third, the Court focused on the employment context. When you get an email from your employer, you're expected to respond and read it, and that's quite different than the context we have here. So none of the three reasons why the Court found it was actually in those particular circumstances reasonable for silence to be acceptance exist here. To the contrary, this case is much more like Robinson, like Robinson when there was no reason an employee there would need to be on the lookout for notice that the entire premise of their employment plan would change. Do you want to reserve your remaining time? I would. Thank you. Okay. Thank you. Mr. Matthews, good morning. Good morning, Your Honor. Good morning, Your Honors. Matt Matthews for AMBIT. Your Honor is exactly right. This is not a unilateral amendment. AMBIT has never claimed it had a right to unilaterally amend the contract. This was an amendment by mutual agreement. So because of that, the only question for the Court at this point is contract formation. The elements of contract formation exist. And the Court doesn't have to get into parsing the amendment provision, although the parties briefed that extensively, to decide contract formation. Was there offer, acceptance, and consideration? And those things are all established by the pleadings. The plaintiffs don't dispute that AMBIT's amended terms were an offer. Their argument is that they didn't have sufficient notice of that offer to accept it. But here, the plaintiffs, as the complaint shows, had actual notice of the terms. The complaint says that they received them, they opened them, and they saw its contents. Because the complaint criticizes the contents. That's really the substance of the plaintiff's argument, is that the substance of the letters and the terms wasn't sufficient. And before you go much further, do you agree with Ms. Garland's recitation of AMBIT's citizenship? I didn't see you break that down quite that way in your briefs, and I was looking for that. Yes, Your Honor, I made a note of that. AMBIT Illinois LLC does have a member in Illinois. There are members in Texas and Delaware, as Ms. Garland said. But Illinois is also a member. The New York case that you asked about, I'm not sure about the citizenship in that, but Kostovetsky, which was a Northern District of Illinois case, AMBIT Illinois LLC was a defendant in that case. It's a 2017 Northern District of Illinois case. And I can give you the site. Okay, no, that's not necessary. Thank you. Thanks. So the plaintiffs criticized the substance of the notice. And first they say that the envelopes that the letters were sent in looked like junk mail. But whatever they looked like, the complaint shows that the plaintiffs opened them and reviewed them because they do go on to criticize the contents. And their criticism is that the letter should have said material change, that it should have used that specific word, and that it should have highlighted better the renewal provision. But as the district court said, that sort of AMBIT provided all the notice that was required by the contract. On the first page of the letters, it said your new or your updated terms are enclosed. It said that they included information about how to renew your plan. It gave, it said that the current plan was expiring. And it gave a deadline for opting out by renewing or canceling the plan. There was more than 45 days out, which was in compliance even with the material change requirement in the contract. And then on the first page of the terms, the new provision was in the second paragraph, the first column, the first page of just three pages, as the district court noted. So that's actual notice under Illinois law, and nothing more was required. The cases that the plaintiff cite, the online click wrap cases, are completely different. In those cases, the Seguro's case, which was one of this court's cases, the website didn't even say anything about the purchase being subject to terms. Schnabel, a Second Circuit case, the plaintiffs didn't even realize they purchased something from the defendants, much less subject to terms. This case is more like this court's Hill case, which the court said that the arbitration provision, the letter told plaintiffs there was a term in close like this case, and the plaintiffs admitted opening it like this case. The court said that the arbitration provision could have been more conspicuous, but that the plaintiffs had notice and an opportunity to read it, and they chose not to. The same applies here. Mr. Matthews, do you agree that the change here was not because of a change in regulatory rules or requirements, any applicable laws or the customer select tariff as set forth in that first sentence of the paragraph? Yes, Your Honor. If your argument is that AMBIC can change for really any reason it wants to as long as it gives the proper notice, why isn't that language superfluous? It's reserving a right, not giving away all of the rights that aren't reserved. And the Illinois Supreme Court's Jesperson case, as applied by this court and Beach forwarders, requires clear and specific language when excluding or limiting a right that's otherwise available at common law, like the right to mutually amend. And the purpose of it is to put customers kind of on notice or warning about certain circumstances that might result in a modification or termination of the contract. But it's not giving up all other rights. And that's clear under Jesperson and Beach forwarders. I have a similar question about that additional language in Beauchat's terms of service. Yes, Your Honor. Why isn't that superfluous? That also includes language for non-material changes. So the amendments provision that appears in both contracts requires 45 days notice for material changes. But Mr. Beauchat's contract has an additional provision that says that AMBIT must also provide 30 days notice for any changes, whether it's material or not. What was more common, the contracts with Beauchat's additional language or the ones that Simon had? Which more common in terms of how many customers had them? Yes, received which type of contract? I don't know, Your Honor. We haven't gotten that deep into the facts yet. It wasn't alleged in the complaint. It's not something that we could rely on in our motion to dismiss. I'm sorry. I don't have that answer. So I talked about notice and the sufficiency here. The plaintiffs had actual notice. In the cases the plaintiffs cite, the plaintiffs didn't even have inquiry notice. And Hill, as I said, is an important case for showing that there was actual notice here. This court and Illinois courts also recognize that silence or inaction can be an acceptance when it's reasonable under the circumstances. And it was reasonable here. The starting point in the original contracts, as the district court mentioned, provided a warning to customers that in the event that a change was sent, that if they took no action in 45 days, that the new terms would become effective. The letter that was sent out provided that 45-day period, and it told them that the new terms were enclosed, that it affected their current plan, that the current plan was expiring, and that the new terms would become effective if they took no action. It also provided them multiple mechanisms for opting out. It said you can call, you can visit our website, or you can send a fax, and it provided the phone numbers and the website. And in addition to that, plaintiffs always, throughout their time with AMBIT, had the opportunity to cancel their contract at no cost, anytime. They were never locked in. So silence in response to those things, being told at the outset, if we send a material change and you take no action, the new terms will be effective. And then being provided actual notice of the new terms makes silence an effective acceptance. It makes it reasonable in these circumstances. And the court's Boomer case shows that. I believe that Gupta shows that as well, the same sort of elements of enclosing the new terms, saying when they would become effective, providing an opportunity to opt out, and a reasonable mechanism for doing so. Those all exist. Is AMBIT still following this procedure, or has it changed its practices on amending contracts? I don't know that question, Your Honor. I'm sorry for similar reasons. We just haven't gotten that deep into the facts yet. So the Reagan is another Illinois case that had similar circumstances, where plaintiffs received terms, acknowledged receipt of them, it told them similar things, and their inaction and response was an acceptance. So that leaves consideration, and the court's Boomer case provides the answer on that. It said that AT&T was offering to provide, continue providing something that it didn't have a continuing obligation to do, and that induced Mr. Boomer's corresponding promise to comply with the new terms. The same is true here. AMBIT did not have an ongoing duty to supply natural gas to the plaintiffs forever. It had a common law right to terminate a contract at will, it was an indefinite term, and the plaintiffs, as I said, had no obligation whatsoever to stay with AMBIT. They were always free to cancel at any time at no cost. So here you have that exchange of consideration. The promise to continue providing service that they weren't otherwise obligated to do, and the plaintiff's corresponding promise to continue under the amended terms. That consideration existed as of 2012. And it's measured as of that date, not with the benefit of hindsight as to how the parties fared. That's what the Feynman case says. But in addition to all of those things, even putting contract formation aside, and I believe it's dispositive and it's established here by the pleadings, but even if the court finds that contract formation is missing, even though plaintiffs didn't argue contract formation was lacking in the district court, they just argued that the contract didn't permit AMBIT to amend, and so it was void of an issue. But putting all that aside, plaintiffs' claims are still barred by limitations. They were filed 12 years after AMBIT sent the amended terms and the notice. That's well outside the limitations period, and there are three theories of breach that the plaintiffs have alleged. They're all based on the original contract. So even if the court finds that contract formation is lacking, all of the alleged breaches under the original contract are lacking. The three theories are that AMBIT breached by sending the amended terms. In 2012, the complaint says that AMBIT breached by sending an insufficient mailer. In mid-2012, that fact is also in the complaint. So under those two theories, you don't have to look beyond the complaint and the letters that were properly attached to AMBIT's motion to dismiss to see that that happened in 2012 and plaintiffs knew about it. So if that is a plausible breach of the contract, that claim accrued in 2012. Their third theory is that AMBIT breached by not sending refund checks each year after 2012. The complaint also establishes that that didn't happen after 2012. Plaintiffs are correct that there can be a continuing breach of a continuous contract, partial breaches in succession, but a continuous contract is also capable of a total breach when there's a repudiation of the contract, and that's what happened here when, in 2012, AMBIT said to the plaintiffs in this letter that they admit receiving, opening, and seeing that if you continue, it will be under these new terms. The old terms don't apply anymore. But that's what they dispute. Their argument is there's a continuing violation on the original contract. Correct, and what I'm saying is that AMBIT, there was a total, under their theory, that AMBIT repudiated the contract in 2012 when it sent the amended terms and said this will control going forward, the old terms won't. We would have to agree with that aspect of your argument on the statute of limitations. If they're correct that it wasn't repudiated, their argument is there's a continuing violation. Well, I think their argument is it continued to control. My argument is AMBIT said no, it doesn't, and it told them that in 2012, that AMBIT repudiated the contract and said going forward, we're not performing under those terms anymore. We will only be performing under these new and amended terms. And plaintiffs knew that, and it's established by the complaint that they knew that in 2012. So that, under their theory, would constitute a total breach of the original contracts. Again, it's our position that the original contracts have been superseded by the amended terms because there was a mutual agreement on those amended terms and all the elements of contract formation are established. I went through the offers undisputed. Notice is the only question or the only thing they dispute as to the offer. There was acceptance and there was consideration. So we think the court can rule on either of those issues without parsing the language of the amendment and that even if the court finds or believes that the third sentence of the amendment provision is a timing provision, as Judge Shaw found, or if the court believes that the third sentence is ambiguous, as plaintiffs have now argued on appeal for the first time. It doesn't matter because AMBIT, it's undisputed now. Plaintiffs no longer dispute that AMBIT had a common law right to amend by mutual agreement that was not limited by the first sentence of the contract. And Jesperson and Beach forwarders make that clear, that it is lacking the clear and specific language of limitation or exclusivity that would further limit AMBIT's right to amend by mutual agreement. The only limitation in the contract on that was 45 days notice for a material change or 30 days notice for Mr. Beauchat for non-material changes and the pleadings established that AMBIT complied with that. If the court has any other questions? No. Thank you, Mr. Matthews. Thank you so much. Ms. Garland, rebuttal. I'd like to just begin by clearing up the fact that the plaintiffs never had any actual notice. The only reason they didn't argue this in front of the district court was because AMBIT never said that they were amending under a common law right to amend. But as we argued in our briefs before this court and as alleged in the complaint, they said that they had no knowledge that AMBIT changed its plan. This is at appendix page 13. They explained that AMBIT failed to adequately notify them that they were subject to a new plan. This is appendix page 18. And the district court, on the fourth page of its opinion, explicitly recognized that's what the plaintiffs had alleged, that they, quote, did not know their plan had changed because AMBIT lulled customers into thinking they would remain on the guaranteed savings plan. So there was no actual notice here. It was not alleged. And, of course, under the common law, you must have clear notice. And the law requires clear notice to ensure that people know the point of the contract that they are being bound to. They also did not have acceptance here. AMBIT seems to, although now just arguing based on the common law, is invoking its contract to say that it gave notice of this silence as acceptance. But, of course, if it has just arguing it has a right under the common law, then the contract did not give any notice that silence was acceptance. Indeed, it didn't because it specified only three reasons by which silence could be acceptance. And, again, the case law here is very indicative. In Gupta, the court was explicit that silence only was acceptance because the initial contract specified that it could be in that specific type of situation. In Sudakow, the Second Circuit case that's quite similar to the one here, the original contract actually was similar in that it said it could unilaterally amend for three different reasons related to rules and regulations, and it did not say it could amend for a fourth reason. And the court found that because there was no notice that silence could be acceptance for a fourth reason, that under the common law it wouldn't construe silence as acceptance. Indeed, the other cases that Ambit cites, Gerber and Feynman, in both of those cases it was about credit card provisions changing. The initial contract specified exactly how silence could be construed as acceptance for this specific type of change that was made there. And Boomer is also distinguishable because the cover letter stated in bold capital letters that silence would be acceptance if they did not opt out. So all of those cases are distinguishable, and the reason why silence is acceptance. And because here, finally, there's no repudiation because Ambit itself argues that it didn't breach the contract. Thank you, Your Honor. Thank you, Ms. Garland. Thank you, Mr. Matthews. The court will take the case under advisement.